**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick (#004738)
J. James Christian (#023614)
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016
Telephone: (602) 255-6000
Fax: (602) 255-0103
rgh@tblaw.com
jjc@tblaw.com

**THE ROSEN LAW FIRM P.A.**
Phillip Kim
Laurence Rosen
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Rapp, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Accelerate Diagnostics, Inc.; Lawrence Mehren; and Steve Reichling,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Brian Rapp, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Class Action Complaint ("Complaint") the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Accelerate Diagnostics, Inc., ("AXDX" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents and press releases; and (c) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the Defendants or are exclusively within their control.

**NATURE OF THE ACTION**

1. This is a securities class action on behalf of all persons and entities other than Defendants who purchased the AXDX securities during the period between March 7, 2014 and February 17, 2015, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violation of the Sections 10(b) and 20(a), and Rule 10b-5 thereunder, of the Securities Exchange Act of 1934.

2. Defendants perpetuated fraud during the Class Period by filing materially misleading publicly filed statements and announcements with the purpose and effect of artificially inflating the market price of AXDX common stock.

**JURISDICTION AND VENUE**

3. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

4. This Court has jurisdiction over the subject matter pursuant to §27 of Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331 as AXDX conducts business and maintains an office in this District.

5. Venue in the Phoenix division of this District is proper because AXDX's statutory agent maintains its office in Phoenix and because the misleading statements that are the subject of this Complaint were transmitted into Maricopa County.

6. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

7. Plaintiff Brian Rapp purchased AXDX securities during the Class Period and has suffered damages as set forth in the accompanying certification.

8. Defendant AXDX is a Delaware corporation with its principal executive offices located at 3950 South Country Club, Suite 470, Tucson, Arizona 85714. AXDX purportedly develops and commercializes solutions for the diagnosis of serious infections. During the Class Period AXDX securities were actively traded on the NASDAQ under the ticker "AXDX."

9. Defendant Lawrence Mehren ("Mehren") served as the Company's Chief Executive Officer, President and a member of the board of directors at all relevant times.

10. Defendant Steve Reichling ("Reichling") served as the Company's Chief Financial Officer at all relevant times.

11. Defendants Mehren and Reichling are collectively referred to hereinafter as the "Individual Defendants."

12. AXDX, Mehren, and Reichling are collectively referred to hereinafter as "Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was involved in drafting, producing, reviewing and/or disseminating the misleading statements and information alleged herein;

(e) was aware of or recklessly disregarded the fact that the misleading statements were being issued concerning the Company; and

(f) approved or ratified these statements in violation of the federal securities laws.

14. As officers, directors, and controlling persons of a publicly held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly traded stock to reflect truthful and accurate information.

15. AXDX is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

16. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to AXDX under respondeat superior and agency principles.

**BACKGROUND**

17. Hospitals face the serious problems of hospital borne infections such as Staph infections and MRSA. Currently, the only way for medical officials and hospitals to detect and diagnose infectious diseases is to require positive blood cultures. This process, typically referred to as an "indirect approach," takes two to

five days.

18. Defendant AXDX is an in vitro diagnostics company that purports to provide solutions for the global challenges of drug resistant organisms and hospital acquired infections. AXDX's main product is their ID/AST system—formerly called the BACcel system. According the Company's press release issued on December 13, 2007:

> The BACcel system has unique capabilities. ***It eliminates culturing delays*** by using well-understood analytical principles in a novel strategy to analyze bacteria extracted directly from a patient specimen.
>
> [Emphasis added].

19. In 2007, Becton Dickinson ("BDX"), a world leading supplier of medical devices, paid AXDX's predecessor, Acceler8, $100,000 for the exclusive rights to negotiate a business relationship for the BACcel platform. Under their agreement, BDX funded a 16-month study of BACcel. The agreement expired without BDX pursuing the relationship and after spending $1.4 million in lost costs.

20. In June 2010, Novartis, a pharmaceutical company entered into an agreement with AXDX to evaluate the BACel system. Similar to the deal with BDX, Novartis spent 16 months evaluating the BACcel system. In September 2011, Novartis declined the option to license the technology.

## SUBSTANTIVE ALLEGATIONS

21. The Class Period begins on March 7, 2014, when AXDX filed its Form 10-K for the fiscal year ending December 31, 2013 (the "2013 Form 10-K") with the SEC. The 2013 Form 10-K stated the following with regards to AXDX's BACcel system:

> The Company's BACcel™ platform utilizes a ***proprietary culture-free process*** with both genomic and phenotypic detection technologies that decrease time to result while maintaining high sensitivity and specificity.
>
> [Emphasis added].

22. The 2013 Form 10-K was signed by Defendants Mehren and Reichling. Attached to the 2013 Form 10-K were Sarbanes-Oxley Act of 2002 ("SOX")

certifications signed by Defendants Mehren and Reichling attesting to the accuracy of the 2013 Form 10-K.

23. On May 2, 2014 AXDX filed its Form 10-Q with the SEC for the first quarter of 2014 ending March 31, 2014 (the "1st Quarter 2014 10-Q"). The 1st Quarter 2014 10-Q stated the following with regards to AXDX's ID/AST system:

> The Company's ID/AST instrument utilizes a ***proprietary culture-free process*** with both genomic and phenotypic detection technologies that decrease time to result while maintaining high sensitivity and specificity.

[Emphasis added].

24. The 1st Quarter 2014 10-Q was signed by Defendants Mehren and Reichling. Attached to the 1st Quarter 2014 10-Q were SOX certifications signed by Defendants Mehren and Reichling attesting to the accuracy of the 1st Quarter 2014 10-Q.

25. On August 1, 2014 AXDX filed its Form 10-Q with the SEC for the second quarter of 2014 ending on June 30, 2014 (the "2nd Quarter 2014 10-Q"). The 2nd Quarter 2014 10-Q stated the following with regards to AXDX's ID/AST system:

> The Company's ID/AST instrument utilizes a ***proprietary culture-free process*** with both genomic and phenotypic detection technologies that decrease time to result while maintaining high sensitivity and specificity.

[Emphasis added].

26. The 2nd Quarter 2014 10-Q was signed by Defendants Mehren and Reichling. Attached to the 2nd Quarter 2014 10-Q were SOX certifications signed by Defendants Mehren and Reichling attesting to the accuracy of the 2nd Quarter 2014 10-Q.

27. On November 4, 2014 AXDX filed its Form 10-Q with the SEC for the third quarter 2014 ending on September 30, 2014 (the "3rd Quarter 2014 10-Q"). The 3rd Quarter 2014 10-Q stated the following with regards to AXDX's ID/AST system:

> The Company's ID/AST instrument utilizes a ***proprietary culture-free process*** with both genomic and phenotypic detection technologies that decrease time to result while maintaining high sensitivity and specificity.

[Emphasis added].

28. The 3rd Quarter 2014 10-Q was signed by Defendants Mehren and Reichling. Attached to the 3rd Quarter 2014 10-Q were SOX certifications signed by Defendants Mehren and Reichling attesting to the accuracy of the 3rd Quarter 2014 10-Q.

29. The statements referenced in ¶¶21–28 above were materially misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made misleading statements and/or failed to disclose that the Company's BACcel or ID/AST system actually requires a positive blood culture.

**THE TRUTH EMERGES**

30. On February 18, 2015, *SeekingAlpha.com* published an article entitled "Accelerate Diagnostics- A Misleading Story Ripe For Decline." The article, in citing to AXDX's corporate documents, revealed that the most likely use of the BACcel or ID/AST System requires a positive blood culture.

31. On this news, the Company's stock fell $4.91 per share or over 21% over the next three days to close at $18.05 per share on February 20, 2015, damaging investors.

**LOSS CAUSATION/ECONOMIC LOSS**

32. During the Class Period, the Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated AXDX's stock price and operated as a fraud or deceit on purchasers of AXDX stock by misrepresenting the capability and description of the Company's main product, BACcel or ID/AST system. Once the Defendants' misrepresentations and fraudulent conduct were disclosed to the market, AXDX's stock price dropped. As a result of Defendants' fraud during the Class Period, Plaintiff and other members of the Class suffered economic loss.

33. Defendants' misleading statements had the intended effect and caused AXDX stock to trade at artificially inflated levels throughout the Class Period.

34. As investors and the market became aware of AXDX's prior omissions, AXDX's stock price reacted negatively, damaging investors.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**AFFILIATED UTE**

35. Neither Plaintiff nor the Class (defined in ¶36 herein) need prove reliance – either individually or as a class – because under the circumstances of this case, which involve omissions of material fact as described above, positive proof of reliance is not a prerequisite to recovery, pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

36. Plaintiff bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all persons and entities other than Defendants who purchased AXDX securities during the period between March 7, 2014 and February 17, 2015, inclusive (the "Class")

37. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AXDX's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Members of the Class may be identified from records maintained by AXDX or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

38. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AXDX; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM
## Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein and (2) cause Plaintiff and other members of the Class to purchase and sell

AXDX securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

44. Defendants (a) employed devices, schemes, and artifices to defraud; (b) omitted material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for AXDX securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of AXDX as specified herein.

46. These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of AXDX's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about AXDX and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaging in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of AXDX's securities during the Class Period.

47. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were

high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's public statements; (3) each of these defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's products at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination to the investing public of information that they knew or recklessly disregarded to be materially misleading.

48. Defendants had actual knowledge of the omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material omissions were done knowingly or recklessly and for the purpose and effect of concealing from the investing public AXDX's operating condition and future business prospects and supporting the artificially inflated price of its securities. Defendants, if they did not have actual knowledge of the omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those omissions were misleading.

49. As a result of the dissemination of the materially misleading information and failure to disclose material facts, as set forth above, the market price of AXDX securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of AXDX's publicly traded securities were artificially inflated, and relying directly or indirectly on the misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by

Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired AXDX securities during the Class Period at artificially high prices and were or will be damaged thereby.

50. At the time of said omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding AXDX's financial results, which were not disclosed by Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their AXDX securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

51. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

52. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

53. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

## <u>SECOND CLAIM</u>
## Violation of Section 20(a) Of
## <u>The Exchange Act Against the Individual Defendants</u>

54. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of AXDX within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge about statements made by the Company disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company,

including the content and dissemination of the various statements that Plaintiff contend are misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

56. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57. As set forth above, AXDX and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their omissions as alleged in this Complaint.

58. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

59. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b) Awarding compensatory damages in favor of Plaintiff and Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and

expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: March 19, 2015.

**TIFFANY & BOSCO, P.A.**

By: *_/s/ Richard G. Himelrick_*
Richard G. Himelrick
J. James Christian
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016

**THE ROSEN LAW FIRM P.A.**
Phillip Kim
Laurence Rosen
275 Madison Avenue, 34th Floor
New York, NY 10016

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*s/ Shelley Boettge*
Shelley Boettge