IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Julia Chang, et al., | ) ) ) | No. CV-15-00504-PHX-SPL |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Accelerate Diagnostics, Inc., et al., | ) ) ) | |
| Defendants. | ) ) ) ) | |

Before the Court are Defendants' Motion to Dismiss First Amended Class Action Complaint (Doc. 37) and Defendants' Request for Judicial Notice (Doc. 39). The Motion to Dismiss is fully briefed and ready for decision. The Request for Judicial Notice is unopposed. For the reasons that follow, the Motion to Dismiss will be granted and the Request for Judicial Notice will be granted in part.

**I.     Background[1]**

On March 19, 2015, Plaintiff Brian Rapp filed this class action against Defendants Accelerate Diagnostic Inc. ("Accelerate"); Lawrence Mehren, Accelerate's CEO; and Steve Reichling, Accelerate's CFO (collectively, "Defendants"). (Doc. 1.) Plaintiff brings claims on behalf of himself and those similarly-situated persons who purchased Accelerate's stock between March 7, 2014 through February 17, 2015 (the "Class Period"). On May 18, 2015, Plaintiff Julia Chang sought appointment as Lead Plaintiff

---

[1]     For purposes of the motion, the Court takes Plaintiff's well-pleaded allegations as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

and approval of her selections of class counsel (Docs. 18, 19), and, on June 9, 2015, the Court granted her motion (Doc. 29). Plaintiff filed the First Amended Complaint ("FAC") alleging that "Defendants perpetuated a fraud … by issuing materially misleading public statements to investors with the purpose and effect of artificially inflating the market price of AXDX common stock." (Doc. 31 ¶ 2.) Plaintiff brings two claims for violations of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. §§ 78j(b) and 78t(a). Count I is for a violation of Section 10(b) of the Act and Rule 10b-5 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. Count II is for a violation of Section 20(a) of the Act.

Accelerate is a publicly-traded company that is developing the ID/AST[2] System (the "System") to reduce the time it takes to diagnose hospital-acquired bacterial infections from days to hours. (Doc. 31 ¶ 19.) "Identification refers to the process of determining what bacteria have infected a patient. Antibiotic susceptibility testing refers to the process of determining what drugs a bacterium is resistant to so that appropriate antibiotics can be prescribed." (Doc. 31 ¶ 20.) The ID/AST System was previously called the BACcel™ platform ("BACcel").

Hospital-acquired infections are of serious concern to hospitals. (Doc. 31 ¶ 16.) Once a patient shows symptoms of infection, they are immediately placed on broad-spectrum antibiotics until testing for bacterial infection is completed. (Id.) Giving patients broad-spectrum antibiotics consists of administering multiple antibiotics at once. (Id.) This is both expensive and accelerates the spread of antibiotic-resistant bacteria. (Id.) Once tested, the doctor can switch to a targeted treatment with a single antibiotic. (Id.) Faster diagnosis, therefore, would be beneficial to hospitals. (Id.) The current testing methods for diagnosing hospital-acquired bacterial infections require a blood test, a positive blood culture, isolate culturing, identifying the bacteria, and finding the right antibiotic to which the bacteria is susceptible. (Doc. 31 ¶¶ 17, 39.) For purposes of this

---

[2]    Identification/Antibiotic Susceptibility Testing.

motion, blood culturing is the process of growing bacteria from a patient specimen to a quantity suitable for isolation and analysis. (Doc. 31 ¶ 17.) This process takes approximately 12 hours. (Doc. 31 ¶ 39.) This step is necessary because presently existing lab tests cannot detect the small concentrations of bacteria in the patient's blood. (Doc. 31 ¶ 17.) If bacterial infection is present in the sample, the culture is referred to as a positive blood culture. (Id.) The next step is "isolate culturing," which requires visual identification of different bacterial colonies, streaking the different bacteria onto separate petri dishes, and allowing the colonies to grow. (Doc. 37 at 9.)  After isolate culturing, the bacteria is identified and then the bacteria is tested to determine susceptibility. (Doc. 31 ¶ 17.) According to Defendants, the isolate culture is time-consuming and is the primary cause of the current two-to-three day testing period. (Id.)

Plaintiff alleges Defendants "repeatedly told investors that ID/AST was a 'culture free' process that tests bacteria 'directly' from a 'patient specimen'" when the System actually requires a positive blood culture. (Doc. 31 ¶¶ 21, 24.) On February 18, 2015, an anonymous poster stated that the process "STILL require[s] a positive blood test (which typically requires 2 to 5 days to get a sample that will run through the diagnostic platform)." (Doc. 38-4 at 61-74.) Within three days, Accelerate's stocks temporarily declined by as much as 21%. (Doc. 31 ¶ 17.)

On July 21, 2015, Defendants filed a Motion to Dismiss for Failure to State a Claim (Doc. 39.) Plaintiff responded (Doc. 40) and Defendants replied (Doc. 41).

## II.    Legal Standard

### A.    Motion to Dismiss

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: (1) lack of a cognizable legal

theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990), *as amended*.

A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Although a complaint "does not need detailed factual allegations," a plaintiff must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*

In reviewing a complaint for failure to state a claim, the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, *id.*, and "are insufficient to defeat a motion to dismiss for failure to state a claim," *In re Cutera Sec. Litig.,* 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted).

Fraud claims, as here, are subject to Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that the pleader "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The plaintiff must also "set forth . . . an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must

be accompanied by the who, what, when, where, and how of the misconduct charged.") (citation and quotation marks omitted).

### B.    Securities Exchange Act and Private Securities Litigation Reform Act

Section 10(b) of the Securities Exchange Act of 1934 prohibits the use or employment of any manipulative or deceptive device in the purchase or sale of any security. 15 U.S.C. § 78j(b). Section 10(b) also requires compliance with SEC rules. Id. SEC Rule 10b-5 prohibits the making of any untrue statement of a material fact or the omission of any material fact necessary in order to make the statements made not misleading. 17 C.F.R. § 240.10b-5(b). Private damages actions under the Act resemble common-law tort actions for deceit and misrepresentation. *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341 (2005). The Act was never intended as insurance for investors, but to protect against economic losses that misrepresentations actually cause. *Id.* at 345. In actions involving publicly-traded securities, the elements are: (1) a material misrepresentation; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Id.* at 341-42.[3]

The Private Securities Litigation Reform Act ("PSLRA") tightened up the requirements to initiate a securities fraud action. The PSLRA requires that the complaint specify each misleading statement, set forth facts on which a belief that a statement is misleading is formed, and state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind. *Id.* at 345.

### III.    Judicial Notice

In a securities-fraud complaint, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues &*

---

[3]    Some case law omits the reliance element, *see In re Daou Sys. Inc.,* 411 F.3d 1006, 1014 (9th Cir. 2005), because a class action, as here, may rely on the fraud-on-the-market presumption. *Dura Pharmaceuticals,* 544 U.S. at 341. Although this presumption is rebuttable, Plaintiff has adequately pleaded reliance and it is not at issue here.

*Rights, Ltd.,* 551 U.S. 308, 322 (2007).

The following documents are incorporated into the FAC by reference and may be considered by the Court: (1) Accelerate's 2013 10-K filed with the SEC;[4] (2) Accelerate's 2014 10-K filed with the SEC;[5] (3) first quarter 2014 10-Q filed with the SEC;[6] (3) second quarter 2014 10-Q filed with the SEC;[7] (3) third quarter 2014 10-Q filed with the SEC;[8] (3) SEC's letter to Accelerate dated August 14, 2014;[9] (4) Accelerate's response to the SEC dated September 9, 2014;[10] (5) SEC's correspondence to Accelerate dated October 3, 2014;[11] (6) Accelerate's response to the SEC dated October 24, 2014;[12] (7) Accelerate's presentation for investors posted on its website dated June 2014; (8) Accelerate's presentation for investors posted on its website dated September 2014; and (9) an article entitled "Accelerate Diagnostics – A Misleading Story Ripe for Decline" (the "Article") published on February 18, 2015 by an anonymous investor identified as Shareholder Watchdog.

The genesis of this action is the publication of the Article. (Doc. 31 ¶ 47.) The investor advised readers to short Accelerate's stock ("AXDX"), and was himself shorting the stock. (Doc. 38-4 at 61.) The author was not an uninterested party; he stood to gain financially if the stock declined. The author stated that the article "expresses their own opinions." (Doc. 38-4 at 61.) It does not purport to be a factual exposé of Accelerate's

---

[4]   www.sec.gov/Archives/edgar/data/727207/000100009614000025/accelerate10k12312013.htm.

[5]   www.sec.gov/Archives/edgar/data/727207/000100009615000020/accelerateddia12312014.htm.

[6]   http://www.sec.gov/Archives/edgar/data/727207/000100009614000056/accelerate3312014.htm.

[7]   http://www.sec.gov/Archives/edgar/data/727207/000100009614000093/accelerate6302014.htm.

[8]   http://www.sec.gov/Archives/edgar/data/727207/000100009614000121/accelerate9302014.htm.

[9]   http://www.sec.gov/Archives/edgar/data/727207/000000000014041312/filename1.pdf.

[10]   http://www.sec.gov/Archives/edgar/data/727207/000114420414055090/filename1.htm.

[11]   http://www.sec.gov/Archives/edgar/data/727207/000000000014049832/filename1.pdf.

[12]   http://www.sec.gov/Archives/edgar/data/727207/000114420414062690/filename1.htm.

goals and motives. Although the Court takes judicial notice of the Article as it is referred to in the FAC and its authenticity is not questioned by the parties, judicial notice is limited to the existence of the Article, not the truth of its contents.[13]

The Court may also consider undisputed "matters of public record" that are judicially noticed. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001). SEC filings are official public records that are readily available online. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1064 n.7 (9th Cir. 2008). They "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The same is true of historic stock prices. *Metzler,* 540 F.3d at 1064 n.7. Therefore, the Court judicially notices the SEC filings, including press releases,[14] and Accelerate's historic stock prices from the Wall Street Journal.

However, the Court will not consider other investor presentations not mentioned in the FAC, press releases not filed with the SEC, or the scientific presentations. These presentations were publicly available on Defendants' website, but Plaintiff did not rely on them in the FAC and their accuracy cannot be readily determined. For the same reasons, the Court will not consider the information from the FDA and the European Community on Antimicrobial Susceptibility Testing. These materials are more appropriate at the motion for summary judgment stage.

**IV.    Discussion**

Defendants assert that the FAC should be dismissed because Plaintiff fails to plead particular facts for the following required elements of a securities-fraud claim: (1)

---

[13]    The author does not appear to understand that current methods require two separate cultures and that the System eliminates the more time-consuming of those cultures. The Article states that the process "STILL require[s] a positive blood test (which typically requires 2 to 5 days to get a sample that will run through the diagnostic platform)." (Doc. 38-4 at 61.) Here, neither party alleges that the initial blood culture takes two to five days prior to introduction to the ID/AST System. The author's confusion undermines his "opinion" that Accelerate "potentially misled investors." (Doc. 38-4 at 64.)

[14]    *See Arce v. Douglas,* 793 F.3d 968, 975 n.3 (9th Cir. 2015) ("We take judicial notice of the press release, because it is a public record on file with the Arizona State Board of Education.")

showing that Defendants made a false statement; (2) giving rise to an inference of scienter, much less the requisite "strong inference;" and (3) establishing loss causation. (Doc. 37.)

### A.      Material Misrepresentation or Falsity

"The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler,* 540 F.3d at 1070. A securities-fraud complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiff must explain "why the disputed statement was untrue or misleading when made." *Yourish,* 191 F.3d at 993 (citation omitted). To do so, Plaintiff can point to "inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." *Id.*

"Rule 10b–5 [prohibits] only misleading and untrue statements, not statements that are incomplete.... Often, a statement will not mislead even if it is incomplete or does not include all relevant facts. Instead, a statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *In re Cutera,* 610 F.3d at 1109 (citations and quotation marks omitted) (alterations in original). A statement is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Reese v. Malone,* 747 F.3d 557, 568 (9th Cir. 2014).

However, "an issuer's public statements cannot be analyzed in complete isolation. Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors. For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers." *In re Convergent*

*Techs. Sec. Litig.,* 948 F.2d 507, 512 (9th Cir. 1991); *see also In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 929-30, 933 (9th Cir. 1996).

The majority of Plaintiff's allegations revolve around Defendants' use of the term "culture-free process" in its SEC filings and in its investor presentations. (Doc. 31 ¶¶ 30, 33, 36, 39, 41, 43.) Plaintiff alleges that the 10-K for 2013 contained additional false statements: (1) that BACcel analyzes live bacteria extracted "directly from a patient specimen;" and (2) that Defendants believed that BACcel could report antibiotic susceptibility "in less than 7 hours after receiving a specimen." (Doc. 31 ¶ 30.)

### 1.    "Culture-Free Process"

The first question before the Court is whether Defendants' claims are "a material misrepresentation (or omission)." *Dura Pharmaceuticals,* 544 U.S. at 341. The parties do not dispute that Accelerate's SEC filings describe its System as one that "utilizes a proprietary culture-free process with both genomic and phenotypic detection technologies that decrease time to result while maintaining high sensitivity and specificity." Plaintiff alleges that the use of the term "culture-free process" is false because the process actually relies on a positive blood culture. (Doc. 31 ¶ 23.) Defendants explain that, "for blood-borne infections, the ID/AST System started with a patient's positive blood culture and reduced the time to result from days to hours by eliminating the separate 'isolate' culture, which is required under current methods to isolate different types of bacteria before they are tested with antibiotics." (Doc. 37 at 6.) Defendants do not deny the need for a positive blood culture. Indeed, they assert that they explain the need for a positive blood culture throughout their materials.

Plaintiff argues that Defendants' explanation is a "truth-on-the-market" defense, and is typically improper at the motion to dismiss stage. (Doc. 40 at 12 citing *In re Immune Response Sec. Litig.,* 375 F. Supp. 2d 983, 1036 (S.D. Cal. 2005).) Defendants respond that a truth-on-the-market defense attempts to prove that the truth made its way to the market through sources other than defendants. (Doc. 41 at 9 citing *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1115 (9th Cir. 1989).) Because Defendants are

asserting that they provided the information to the market, they argue that this cannot be a truth-on-the-market defense. (Id.) The Court agrees. The truth-on-the-market doctrine takes into account that the truth is available to the market and is priced into the market, regardless of the disclosures of defendants. *See Provenz v. Miller,* 102 F.3d 1478, 1492 (9th Cir. 1996). Here, Defendants assert "that the statements themselves, read in context, are simply not false or misleading." (Doc. 41 at 9-10.) This is not a truth-on-the-market defense.

### 2.      SEC Comment Letters

As support for her position that Defendants' use of the term "culture free" is misleading, Plaintiff points to the SEC's comment letters to Defendants in 2014. The SEC reviews filings and may request additional information, commonly called comment letters. The SEC's website describes the comment letters as follows:

> In issuing comments to a company, the staff may request that a company provide additional supplemental information so the staff can better understand the company's disclosure in a document on file with the SEC, provide additional disclosure in a document on file with the SEC, or provide additional or different disclosure in a future filing with the SEC. There may be several rounds of letters from the SEC staff and responses from the filer until the issues identified in the review are resolved. These letters set forth staff positions and do not constitute an official expression of the SEC's views.

U.S. Securities and Exchange Commission, Investor Information on Comment Letters.[15]

On August 14, 2014, the SEC sent Accelerate a comment letter noting the "culture-free process" and requesting information on how it achieves cell growth without a culture. (Doc. 38-4 at 43.) On September 9, 2014, Accelerate responded as follows:

> When we state that the ID/AST System uses a "culture-free process," we are referring to our system's ability to directly process a positive blood culture, respiratory, or other specimen without first undergoing a manual culture and isolation process. This contrasts with conventional identification and susceptibility testing methods that require overnight culturing to produce a pure isolate prior to testing.

---

[15]      http://www.sec.gov/answers/commentletters.htm.

(Doc. 38-1 at 25.) On October 3, 2014, the SEC responded that this more-detailed description "appears necessary for an investor to understand your use of the term 'culture-free process,'" but sought confirmation that future filings would contain "appropriate explanatory disclosure. (Doc. 38-4 at 49.) On October 24, 2014, Defendants confirmed that "in future filings, as appropriate, we will provide explanatory disclosure with respect to our use of the term 'culture-free process.'" (Doc. 38-4 at 54.) In its October 3, 2014 letter, the SEC also noted that Defendants failed to respond to its request for more information on what type of growth medium the ID/AST System uses. (Doc. 38-4 at 49.)[16] Defendants responded that "the appropriate media condition is selected by the system's software based on pathogen identified using FISH in the first step. AST is then performed using media that optimizes growth conditions for that pathogen." (Doc. 38-4 at 54.) That completed the SEC's 10-K review and they took no further action on the matter. On December 4, 2014, the SEC made the correspondence publicly available on its website.

Plaintiff alleges that Defendants' response "did not make clear that the ID/AST System could never function as a blood test without a prior positive blood culture." (Doc. 31 ¶ 27.) Plaintiff further alleges that, as to the growth medium, Defendants' response "created further confusion and failed to make clear that the ID/AST could never function without a prior blood culture." (Doc. 31 ¶ 29.) The Court disagrees. The SEC found Defendants' responses appropriate and did not request any further information. (Doc. 38-4.) Furthermore, Rule 10b-5 prohibits misleading and untrue statements, not incomplete statements. *In re Cutera,* 610 F.3d at 1109. Defendants' statement that their "system's ability to directly process a positive blood culture, respiratory, or other specimen without first undergoing a manual culture and isolation process" is not misleading or untrue.

The SEC requested additional information and Defendants provided it, despite

---

[16]   Although the SEC requested more information, it was "[w]ith a view towards future disclosure," rather than correcting past disclosures. Presumably, if the SEC believed the filer was making a patently fraudulent claim, it would require a corrective disclosure.

their belief that the information was unnecessary. (Doc. 38-1 at 26.) Defendants' agreement to include a more-detailed description in the future does not indicate that its prior statements were false or misleading.

### 3.   Analysis of Defendants' Statements

Defendants' SEC filings state that they are "an in-vitro diagnostics company focused on developing and commercializing innovative systems for the rapid identification and antibiotic susceptibility testing of infectious pathogens. The Company's revolutionary ID/AST instrument utilizes a proprietary culture-free process with both genomic and phenotypic detection technologies that significantly decreases time to result while achieving high sensitivity and specificity." (Doc. 38-1 at 7; *see also* Doc. 38-1 at 4, 11, 42.) At worst, Defendants' description is incomplete, which does not violate Rule 10b-5. *In re Cutera,* 610 F.3d at 1109; *see also Brody v. Transitional Hospitals Corp.,* 280 F.3d 997, 1006 (9th Cir. 2002) ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not. To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."). On SEC Form 10-K for 2013, Defendants state that "[t]he BACcel™ system applies our proprietary technology to eliminate time-consuming bacterial culturing, thus eliminating the major source of delay with current testing methods." (Doc. 38-1 at 43.) This statement describes the major reason why they have been able to shorten the testing period, regardless of whether the investor believes that "bacterial culturing" is the positive blood culture or the isolate culturing. Plaintiff does not allege that Defendants have been unable to shorten the testing period compared to current methods. The statement does not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody,* 280 F.3d at 1006.

In Defendants' June 2014 investor presentation, they explain how the ID/AST System works: it takes a positive blood specimen (or bronchoalveolar lavage fluid or

wound swab) and, in less than six hours, produces a final report. (Doc. 38-4 at 89.) Another slide is entitled "Positive Blood Culture Time to Result." (Doc. 38-4 at 91.) The chart shows the current process after receiving a positive blood culture as taking approximately 36 hours compared to the ID/AST System that takes approximately six hours. (Id.) The chart shows that the ID/AST System eliminates the culture/isolate process. (Id.) The slide that Plaintiff alleges is false or misleading in the presentation states that "[o]ur discovery eliminates need for cell culture." (Docs. 31 ¶ 41; 38-4 at 87.) Plaintiff claims the statement is misleading because the ID/AST System "require[s] a positive blood culture to work." (Doc. 31 ¶ 42.) If a reasonable investor reviewed all of the slides, not just a single slide in the middle of a presentation, he or she would not be misled into believing that process does not require a blood culture. The June 2014 presentation, when viewed in its entirety, is not misleading or false.

In Defendants' September 2014 investor presentation, one slide states that their process is high speed, claiming that "ID and AST on positive blood culture samples in <5 hours," which is "24-36 hours faster than current methods." (Doc. 38-3 at 12.) Another slide shows three steps: the first is to "[l]abel with sample ID and fill with 2 ml positive blood culture;" then insert the cassette into the machine, insert the reagent cartridge and begin. (Doc. 38-3 at 17.) Another slide contains five circles: (1) "Positive Blood Culture;" (2) "Sample Prep;" (3) "Immobilize and Map;" (4) "1 hour ID Result;" and (5) "<5 hour AST Result." (Doc. 38-3 at 19.) The slide that Plaintiff alleges is false or misleading states that it is "[d]irect from sample – no plating or culture required." (Doc. 31 ¶ 39.) However, the title of that slide is "Accelerated Answers: Positive Blood Culture Example." (Id.) The accompanying chart compares Accelerate's methods and current methods. (Id.) Both charts show a blood draw and a blood culture with the same amount of time needed for the positive culture. (Id.) The methods then diverge with the current method showing the need for a time-consuming isolate culture, whereas Defendants' method eliminates the isolate culture. (Id.) In the remaining two phases, identification and antibiotic susceptibility testing, the chart shows that the ID/AST System requires

13

much less time than through current methods. (Id.) Plaintiff claims the statement that "no plating or culture required" is misleading because the ID/AST System "require[s] a positive blood culture to work." (Doc. 31 ¶ 40.) However, that interpretation requires the reader to look at one statement on the slide and ignore the remainder of the slide and the presentation. Any confusion caused by reading "culture-free process" in isolation is dispelled by reading Defendants' statements in context.[17]

Plaintiff also alleges that Defendants' claim that they analyze live bacteria extracted "directly from a patient specimen" is false and misleading; however, this is a conclusory statement. (Doc. 31 ¶ 21, 32, 35.) Plaintiff's only support that this statement is misleading comes from the Article, which states that "[a] 'direct from sample' methodology implies that a positive blood culture is not required." (Doc. 31 ¶ 48.) Given the author's apparent misunderstanding of what the System actually requires, this does not factually support Plaintiff's claim.

Lastly, Plaintiff alleges that Accelerate's statement that it believed that BACcel could report antibiotic susceptibility "in less than 7 hours after receiving a specimen" is false and misleading. Plaintiff does not further explain how this is untrue. The statement does not say or imply that they can report antibiotic susceptibility in less than seven hours after symptoms of infection have been identified. A literal interpretation of Defendants' statement is that the ID/AST System can report antibiotic susceptibility in less than seven hours after the specimen is ready to be placed in the System. An investor would need to make several incorrect assumptions in order to read the statement as false. Plaintiff fails to state a claim under the PSLRA.

---

[17]    The Court notes that Defendants' statements, when read in isolation or in haste, may cause confusion. This is reinforced by the fact that the Article's author was confused after apparently doing some research on Accelerate. This is further reinforced by the SEC's request for additional information or clarification. However, confusion is not the same as a false or misleading statement. Here, no substantial likelihood exists that the disclosure of the omitted fact, that the ID/AST System starts with a positive blood culture, "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Reese,* 747 F.3d at 568. The total mix of information would be the same because Defendants actually disclosed that the System starts with a positive blood culture.

14

Plaintiff urges the Court to read a few isolated terms and find her allegations of falsity adequately pleaded because the ID/AST System starts with a positive blood culture. However, in context of all of the materials provided by Defendants and available to Plaintiff, such a reading is strained at best. Given that current methods require two separate cultures and Defendants' method requires one culture, the possibility for confusion exists and Defendants have addressed those statements for future investors. However, a "possibility" of "confusion," or a lack of sufficient detail, cannot be equated with Defendants purposefully making a false or misleading statement. Plaintiff strives to identify a patently false statement, but struggles. She relies on statements such as: "it would have confused investors;" "it does not make clear;" "a reasonable investor might have inferred;" "investor might well have inferred;" investor "would have therefore inferred;" and "an investor might have believed." (Doc. 40 at 13-14.) Plaintiff falls short of explaining "why the disputed statement was untrue or misleading when made." *Yourish,* 191 F.3d at 993.)

Defendants essentially claim that they are attempting to make the laboratory process shorter to provide better outcomes for patients. Plaintiff has not identified anything false about this claim. After reviewing the documents in which Plaintiff alleges that Defendants made untrue statements, and viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to meet her burden under the PSLRA to identify a false or misleading statement.

### B.   Scienter

Alternatively, the Court reviews Plaintiff's allegations of scienter. The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler,* 540 F.3d at 1066. A strong inference of scienter is "a strong inference that the defendant

acted with an intent to deceive, manipulate, or defraud." *Id.* at 1061. In assessing scienter, a court must consider not only inferences favoring the plaintiff but also "plausible, nonculpable explanations for the defendant's conduct." *Tellabs,* 551 U.S. at 323-24. Conclusory allegations of scienter not based on specific facts do not shed light on defendant's mental state. *DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 390-91 (9th Cir. 2002). A court must consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs,* 551 U.S. at 322-23. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Plaintiff alleges that scienter is established through the following: (1) the ID/AST System was Accelerate's only product thereby involving a core operation; (2) Accelerate was a small company and Mehren and Reichling were fully familiar with its operations; (3) Mehren and Reichling had access to sources of information that would have revealed the fraud; (4) Mehren and Reichling were aware of "red flags" such as the SEC letters; (5) Mehren and Reichling were responsible for preparing and delivering investor presentations; and (6) Mehren's expertise was critical to Accelerate's success.

Taking these allegations as true, Plaintiff fails to show that Defendants acted with "an intent to deceive, manipulate, or defraud." *Metzler,* 540 F.3d at 1061. None of these actions show that Defendants believed the description of the System as culture free was false or misleading. Also, Defendants' disclosure in the investor presentations that the System started with a positive blood culture militates against scienter. Here, no reasonable person could "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324.[18] Plaintiff has failed to state a claim upon which relief may be granted. As such, the

---

[18]    The Court need not reach the issue of loss causation.

Court will dismiss the action.

## V.     Amendment

Rule 15 of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). *See also Carrico v. City & Cnty. of San Francisco,* 656 F.3d 1002, 1008 (9th Cir. 2011) ("It is properly denied, however, if amendment would be futile.").

Here, amendment would be futile. Defendants' statements were not false or misleading and lacked any scienter on the part of Defendants. Amendment cannot cure these deficiencies. Therefore, this action will be dismissed with prejudice. Accordingly,

**IT IS ORDERED:**

1.     That Defendants' Motion to Dismiss (Doc. 37) is **granted**;

2.     That this action is **dismissed with prejudice** in its entirety;

3.     That the Clerk of Court shall **terminate** this action; and

4.     That the Clerk of Court shall enter judgment accordingly.

Dated this 28th day of January, 2016.

Honorable Steven P. Logan
United States District Judge

17